USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: October 18, 2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE REGISTERED HOLDERS OF J.P. MORGAN COMMERCIAL MORTGAGE SECURITIES CORP., MULTIFAMILY MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2017-SB36,

Plaintiff,

-v.-

NEW 1275 LAFAYETTE, LLC, et al.,

Defendants.

25 Civ. 6470 (JHR)

OPINION & ORDER

JENNIFER H. REARDEN, District Judge:

This is a foreclosure action brought by Plaintiff U.S. Bank, National Association, as Trustee for the Registered Holders of J.P. Morgan Commercial Mortgage Securities Corp., Multifamily Mortgage Pass-Through Certificates, Series 2017-SB36, regarding real property located at 1275 Lafayette Avenue, Bronx, New York, 10474. The property secures a commercial mortgage loan to Defendant New 1275 Lafayette, LLC. As detailed below, the loan was made by Greystone Servicing Corporation, Inc., assigned to Federal Home Loan Mortgage Corporation, and then assigned to Plaintiff. *See infra* at 2. Defendants Moses Neuman and Usher Steinmetz guaranteed the loan. Before the Court is Plaintiff's Motion to Appoint a Receiver. ECF No. 14. For the reasons set forth below, the Court GRANTS Plaintiff's motion. By separate order today, the Court has appointed Trigild IVL to act as receiver with respect to the property at 1275 Lafayette Avenue, Bronx, New York, 10474.

# I. BACKGROUND

## A. Factual Background

"[T]he facts relevant to this motion are . . . taken from the declarations submitted . . . in relation to the current motion." *Wilmington Tr., Nat'l Ass'n v. 31 Prince St., LLC*, No. 22 Civ. 5855 (JGK), 2023 WL 414249, at *1 (S.D.N.Y. Jan. 25, 2023).

On or about May 5, 2017, Defendant New 1275 Lafayette, LLC ("Borrower") executed an agreement to borrow $4,775,000 from Greystone Servicing Corporation, Inc., the original lender. ECF No. 17 ¶ 7 (Walet Decl.); *see* ECF No. 5 ¶ 28 (Compl.). That loan, which "is almost entirely nonrecourse," Walet Decl. ¶ 8, was "secured by . . . Borrower's real property, improvements thereon and personal property, with a street address of 1275 Lafayette Avenue, Bronx, New York 10474," *id.* ¶ 9; *see also* ECF No. 5-6 (Security Instrument); Compl. ¶ 9. Defendants Moses Neuman and Usher Steinmetz (the "Guarantors") "absolutely, unconditionally, and irrevocably guaranteed the full and punctual payment and performance of Borrower's obligations under Article III of the Loan Agreement." Walet Decl. ¶ 11; ECF No. 5-7 (Guaranty Agreement).

Also on May 5, 2017, Greystone "assigned all of [its] right, title, and interest in and to the Loan and the Loan Documents to Federal Home Loan Mortgage Corporation," which, in turn, "assigned all of its right, title, and interest in and to the Loan and the Loan Documents to [Plaintiff]" on August 7, 2017. Walet Decl. ¶ 13-14; ECF No. 5-9 (Assignment to Federal Home Loan Mortgage Corporation); ECF No. 5-10 (Assignment to Plaintiff).

Section 6.08 of the Loan Agreement obligates Borrower to, *inter alia*, "pay or cause to be paid all Taxes when due and before the addition of any interest, fine, penalty or cost for nonpayment." ECF No. 5-4 § 6.08; Walet Decl. ¶ 16. "[F]ail[ure] to perform" these obligations is an "Event of Default[]" under the Loan Agreement. ECF No. 5-4 § 8.01(r); Walet Decl.

¶¶ 16-20. The related Security Instrument provides that, upon an "Event of Default," "Borrower's license to collect Rents will automatically terminate and [Plaintiff] will without Notice be entitled to all Rents as they become due and payable, including Rents then due and unpaid. Borrower will pay to [Plaintiff] upon demand all Rents to which Lender is entitled." Security Instrument at 21-22, § 3(b)(iii); Walet Decl. ¶ 17-18. Furthermore, section 7 of the Security Instrument holds "Borrower . . . liable for [Plaintiff's] costs and expenses (including attorney's fees) incurred as a result of any default under the Security Instrument or in connection with Lender's enforcement of its rights under any other Loan Document." Walet Decl. ¶ 19; Security Instrument at 27-28, § 7.

The parties also agreed that, "if an Event of Default has occurred and is continuing, regardless of the adequacy of [Plaintiff's] security, without regard to Borrower's solvency and without the necessity of giving prior notice (oral or written) to Borrower, [Plaintiff] may apply to any court having jurisdiction for the appointment of a receiver for the Mortgaged Property to take any or all of the actions set forth in the preceding sentence. If [Plaintiff] elects to seek the appointment of a receiver for the Mortgaged Property at any time after an Event of Default has occurred and is continuing, Borrower, by its execution of this Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law." Security Instrument at 23, § 3(c)(ii).

On behalf of Plaintiff, Parker J. Walet has declared that Borrower defaulted on the Loan Documents "as a result of Borrower's failure to pay all Taxes as and when due, and its failure to reimburse Lender for all amounts advanced on its behalf for payment of Taxes." Walet Decl. ¶ 20; Compl. ¶¶ 2, 41.[1] By letter dated May 27, 2025, Plaintiff "notified Borrower and

[1] Mr. Walet is "an Asset Manager for KeyBank National Association [], the servicer and authorized agent for the Plaintiff." Walet Decl. ¶ 1.

Guarantors of Borrower's default under the Loan Documents for failing to pay all Taxes as and when required under the Loan Documents, including failure to reimburse [Plaintiff] $195,247.06 as of May 27, 2025, for advances made on Borrower's behalf for payment of the Taxes." Walet Decl. ¶ 21; ECF No. 5-11 (Notice of Default Letter).

Borrower "failed to cure the Event of Default." Walet Decl. ¶ 22. Accordingly, on June 11, 2025, Plaintiff "notified Borrower of its continuing defaults, and that [Plaintiff] was accelerating all amounts due and owing under the Note and revoking Borrower's license under the Loan Documents to receive, collect, and make use of Rents." Walet Decl. ¶¶ 22-23; ECF No. 5-12 (Acceleration Letter).

Borrower "failed to pay the accelerated balance" and thus "remain[ed] in default." Walet Decl. ¶ 25. As a result, by July 1, 2025, Plaintiff advanced a total of "$271,673.38 towards the payment of Taxes." *Id.* ¶ 26.

Parker Walet has also declared that Plaintiff "has not received payment from Borrower in an amount sufficient to repay the accelerated indebtedness in full." *Id.* ¶¶ 28-32. Nor has Borrower, according to Plaintiff, "cooperate[ed] with [Plaintiff] to obtain an appraisal of the Property, despite multiple requests for cooperation," leaving Plaintiff "unable to accurately assess the value of the Property." *Id.* ¶ 31. Notwithstanding that Plaintiff "revok[ed] Borrower's license under the Loan Documents to receive, collect, and make use of Rents," Walet Decl. ¶¶ 22-23; ECF No. 5-12 (Acceleration Letter), "Borrower continues . . . to collect rent and other income generated from the operations at the Property," *id.* ¶ 28.

**B. Procedural History**

On August 8, 2025, Plaintiff filed the Complaint in this action, seeking "to foreclose [the] first-priority lien held by Lender on [the] commercial real and personal property located at 1275 Lafayette Avenue, Bronx, New York 10474." Compl. ¶ 1; *see id.* ¶ 53 (citing Plaintiff's "right to

institute a proceeding for foreclosure."). Plaintiff averred that, "[g]iven the occurrence and continuance of Borrower's default under the Loan Documents, and considering Borrower expressly consented to the appointment of a receiver upon the occurrence of an Event of Default," Plaintiff was "entitled to the immediate appointment of a receiver for the Property on an *ex parte* basis." *Id.* ¶ 52.

The Complaint named "New 1275 Lafayette, LLC, Moses Neuman, Usher Steinmetz, the City of New York Environmental Control Board, and John Doe No. 1 through John Doe No. XXX" as Defendants. *Id.* at 1. Plaintiff alleged that "John Does I through XXX are currently unknown to [Plaintiff] but, upon information and belief, are tenants, occupants, persons, or corporations, if any, having or claiming an interest in or lien upon the premises described in the Complaint." *Id.* ¶ 14.

Plaintiff served Defendants Steinmetz and the City of New York Environmental Control Board with process on August 19, 2025, ECF Nos. 10-11; Defendant New 1275 Lafayette, LLC, Defendant Dish Wireless L.L.C., and the John Doe Defendants on August 22, 2025,[2] ECF Nos. 8, 12-13; and Defendant Neuman on September 4, 2025, ECF No. 9.

On September 22, 2025, Plaintiff moved to appoint Trigild IVL as a receiver "with respect to certain real property, improvements thereon, and personal property located at 1275 Lafayette Avenue, Bronx, New York 10474." ECF No. 14. In support of its motion, Plaintiff filed a memorandum of law, ECF No. 15 (Pl. Br.), and two declarations. ECF Nos. 16-17. Plaintiff served the motion on all Defendants on September 23, 2025. ECF No. 18.

On October 29, 2025, Defendants New 1275 Lafayette, LLC, Neuman, and Steinmetz (together, the "Borrower Defendants") appeared, ECF Nos. 19-20, and moved for an extension

[2] Plaintiff served the John Doe Defendants "[b]y affixing and taping a true copy [of the notice of foreclosure] to the entrance door of [the] property." ECF No. 13.

of time to respond to the Complaint and to Plaintiff's motion for a receiver, ECF No. 21. On November 3, 2025, the Court granted that motion, extending to November 14, 2025 the time for the Borrower Defendants to respond to both the Complaint and Plaintiff's motion to appoint a receiver. ECF No. 22.

On November 14, 2025, the Borrower Defendants filed their Answer to the Complaint, ECF No. 23, and a memorandum of law in opposition to the motion to appoint a receiver, ECF No. 24 (Defs. Op.). The Borrower Defendants did not adduce any declarations or other evidence.

On November 21, 2025, Plaintiff filed a reply memorandum of law in further support of its motion to appoint a receiver. ECF No. 25 (Pl. Reply).

Defendant the City of New York Environmental Control Board, Defendant Dish Wireless, L.L.C., and the John Doe Defendants have not appeared.

## II. DISCUSSION

"District courts have 'the power in equity to appoint a receiver in order to protect a party's interest in the property.'" *Wilmington Tr., Nat'l Ass'n v. Aevri Salina Meadows LLC*, No. 23 Civ. 8824 (JPC), 2023 WL 8111795, at *3 (S.D.N.Y. Nov. 22, 2023) (quoting *Wilmington Tr., Nat'l Ass'n v. Winta Asset Mgmt. LLC*, No. 20 Civ. 5309 (JGK), 2020 WL 5802365, at *1 (S.D.N.Y. Sept. 28, 2020)). "Whether a federal court should appoint a receiver in a diversity action is governed by federal law." *U.S. Bank Nat'l Ass'n v. Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d. 247, 249 (S.D.N.Y. 2012). "The appointment of a receiver is considered to be an extraordinary remedy, and should be employed cautiously and granted only when clearly necessary to protect plaintiff's interests in the property." *Id.* (quoting *Rosen v. Siegel,* 106 F.3d 28, 34 (2d Cir. 1997)).

"In assessing a motion for appointment of a receiver, courts [] consider the following factors: [1] Fraudulent conduct on the part of defendant; [2] the imminent danger of the property being lost, concealed, injured, diminished in value, or squandered; [3] the inadequacy of the available legal remedies; [4] the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment; [5] and, in more general terms, plaintiff's probable success in the action and the possibility of irreparable injury to [its] interests in the property." *Aevri Salina Meadows LLC*, 2023 WL 8111795, at *4 (citing *Varsames v. Palazzolo*, 96 F. Supp. 2d 361, 365 (S.D.N.Y. 2000)).

Plaintiff emphasizes that "Borrower expressly consented to the appointment of a receiver upon Borrower's default." Pl. Br. at 9 (citing Security Instrument). According to the Borrower Defendants, "courts regularly hold that loan documents containing a provision for the appointment of a receiver do not automatically require the appointment of a receiver upon request to the court." Defs. Op. at 4.

"The existence of a provision authorizing the application for a receiver in the event of a default[] 'strongly supports the appointment of a receiver' when there is a default." *Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d. at 250 (quoting *Citibank, N.A. v. Nyland (CF8) Ltd.*, 839 F.2d 93, 97 (2d Cir. 1988)). But "the 'mere existence of such [a] contractual provision does not [ ] dispose of the Court's inquiry'" into this matter. *Aevri Salina Meadows LLC*, 2023 WL 8111795, at *3 (quoting *D.B. Zwirn Special Opportunities Fund, L.P. v. Tama Broad., Inc.*, 550 F. Supp. 2d 481, 491 (S.D.N.Y. 2008)); *see Wells Fargo Bank, Nat'l Ass'n v. 840 Westchester Ave. NMA, LLC*, 786 F. Supp. 3d 586, 601 (S.D.N.Y. 2025).

"[W]here the defendant has consented to the appointment of a receiver in the mortgage agreement," however, "the burden shifts to the defendant to demonstrate why a receiver should not be appointed." *Computershare Tr. Co. N.A. v. 907 Assocs. LLC*, No. 25 Civ. 5015 (MMG),

2025 WL 2402262, at *2 (S.D.N.Y. Aug. 19, 2025); *see also Nesbitt Bellevue Prop. LLC*, 866 F. Supp. 2d. at 250 (distinguishing between provision that merely permits lender to "apply for the appointment of a . . . receiver" and one in which borrower "consent[s] to the appointment of a receiver" and finding that, where "there is no explicit consent by the defendants to the appointment [of a receiver]," "the burden remains on the [lender]"). As previously noted, the Borrower Defendants "expressly consent[ed] to the appointment of [a] receiver" in the Security Instrument, which also provides that, "without regard to Borrower's solvency and without the necessity of giving prior notice [to the Borrower Defendants] . . . [Plaintiff] may apply to any court having jurisdiction for the appointment of a receiver." Security Instrument at 23, § 3(c)(ii); *see CFSP 2024-AHP1 81-83 Seaman Ave. LLC v. 81 Seaman Realty LLC*, No. 25 Civ. 4113 (RA), 2025 WL 2606687, at *3 (S.D.N.Y. Sept. 9, 2025) ("Here, the Loan Documents expressly authorize [Lender] to have a receiver appointed to enter upon and take possession of the Property if [Borrower] defaults. This alone is a strong indication that [Lender] is entitled to appointment of a receiver here. Indeed, this language is unqualified—authorizing appointment . . . 'without regard' to the Property's condition or the [Borrower's] solvency—and is even more robust than other provisions that have factored heavily in decisions by other courts to appoint receivers." (collecting cases)). Accordingly, the Court finds that "Plaintiff has made out a prima facie case for the appointment of a receiver," and the Borrower Defendants bear the burden of "demonstrat[ing] why a receiver should not be appointed." *Computershare Tr. Co. N.A.*, 2025 WL 2402262, at *2; *Delaware Tr. Co. v. Sherman Holdings USA LLC*, No. 26 Civ. 700 (AT) (RFT), 2026 WL 2163648, at *4-5 (S.D.N.Y. June 5, 2026) (similar), *adopted*, 2026 WL 2151692 (S.D.N.Y. July 27, 2026).

Moreover, as explained above, the Borrower Defendants have not proffered any evidence in opposition to Plaintiff's motion. "Given th[e] evidence presented of [] events of default, and

the lack of an opposition from [the Borrower Defendants] contesting that evidence, the Court finds that the mortgage provision allowing Plaintiff to seek appointment of a receiver 'strongly supports the appointment of a receiver.'" *Aevri Salina Meadows LLC*, 2023 WL 8111795, at *4 (quoting *Citibank, N.A.*, 839 F.2d at 97).

The Borrower Defendants advance four arguments why the Court should deny Plaintiff's motion for a receiver: (1) Plaintiff has not demonstrated that a receiver is "[]necessary to [p]rotect the [] [p]roperty from [l]oss or [w]aste"; (2) other "available legal remedies are sufficient"; (3) "Plaintiff has not alleged that the Borrower engaged in any fraudulent conduct"; and (4) Plaintiff has not demonstrated a likelihood of success on the merits of the underlying foreclosure action. Defs. Op. at 4-8.[3]

Regarding the first point, "danger of the diminution of the value of the properties . . . is a critical factor in the analysis of whether to appoint a receiver." *Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 250. The Borrower Defendants contend that a receiver is unnecessary because "Plaintiff failed to submit any evidence in support of its motion that the building is under stress or faces any diminution in value." Defs. Op. at 4-6 (citing *Coll. Diamond Fund Inc. v Davis*, No. 24 Civ. 4800 (AT) (RFT), 2025 WL 1626442, at *13 (S.D.N.Y. Jan. 30, 2025) and *JDP Mortg. LLC v. Gosman*, No. 19 Civ. 5968 (JS) (SIL), 2020 WL 8082390, at *3 (E.D.N.Y. Dec. 21, 2020)). That argument fails. For one thing, the Borrower Defendants did not submit any

[3] The Borrower Defendants argue that in *Green Mountain Holdings (Cayman) Ltd. v. LV Avenue 35 Corp.*, No. 22 Civ. 1395 (OEM), 2023 WL 11984988 (E.D.N.Y. Nov. 17, 2023), which they characterize as "directly on point," the "Court denied the Plaintiff's application for the appointment of a receiver despite the existence of a provision in the mortgage allowing the appointment of a receiver." Defs. Op. at 3-4. "[L]acking [t]here," however, "[wa]s . . . [the] presence of some potential harm or injury to a property itself or its value *in addition to* the presence of a contractual entitlement to seek a receiver." *Id.* Here, in contrast, "in addition to" the Borrower Defendants' consent to a receiver in the Security Instrument, *see id.*, the other factors discussed herein also favor appointment of a receiver. *See infra.*

evidence in opposition to Plaintiff's motion, notwithstanding that they bear the burden of demonstrating that a receiver is not warranted.[4] Further, the Walet Declaration clarifies why Plaintiff was unable to "submit any evidence" of "diminution in value," Defs. Op. at 4-6: Borrower did not "cooperate with [Plaintiff] to obtain an appraisal of the Property, despite multiple requests for cooperation," leaving Plaintiff "unable to accurately assess the value of the Property," Walet Decl. ¶ 31.

In any event, the Borrower Defendants' failure to pay the required taxes "amply demonstrates that the Borrower [Defendants'] continued management will irreparably harm Plaintiff's interest in the Mortgaged Propert[y]." *Sovereign Bank v. 347 East 173 LLC*, No. 11 Civ. 1061 (LBS), 2011 WL 2693525, at *3 (S.D.N.Y. June 29, 2011). As a result of the non-payment of the required taxes, "[P]laintff has had to advance over [$270,000] to pay the unpaid taxes, lest the Plaintiff risk a tax lien be[] levied against the Propert[y]. A tax lien on the Properties certainly could result in a diminution in value of the Properties and, in the most extreme case, seizure of the Properties." *31 Prince St., LLC*, 2023 WL 414249, at *3; *see* Pl.

---

[4] Nor do the Borrower Defendants' cases support their position. First, while the court in *College Diamond Fund* noted the absence of "any reliable documentation regarding the current value of the Property," 2025 WL 1626442, at *13, the court also found that the purported harms identified by the plaintiff had occurred years earlier, "approximately six years before filing this suit," *id.* In other words, the plaintiff had long been "on notice of the factors that [it] [then] claim[ed] support[ed] a finding of imminent risk of harm." *Id.* Plaintiff filed this action, however, soon after notifying Borrower of its default, *see* ECF No. 5-11 (notice of default on May 27, 2025); ECF No. 5 (Complaint filed August 8, 2025), and "there is a significant danger of the Propert[y] being 'lost, concealed, injured, diminished in value, or squandered,' because of the Borrowers' failure to pay the necessary taxes," *31 Prince St., LLC*, 2023 WL 414249, at *3 (quoting *Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 249-50). Second, in *JDP Mortgage*, although the absence of "any reliable documentation regarding the current value of [the property at issue]" influenced the court in denying appointment of a receiver, 2020 WL 8082390, at *2-3, the *JDP Mortgage* court also found that each of the factors analyzed herein counseled *against* appointment. *See id.* at *2-4. In the instant matter, the factors *support* appointment of a receiver.

Reply at 4 ("[T]he failure to pay taxes exposes the Property to the risk of superior liens, which may threaten the value of the collateral and Lender's interest in the Property.").

Next, the Borrower Defendants suggest that alternative legal remedies provide suitable protection—namely that "Plaintiff's foreclosure action is sufficient to compensate the Plaintiff should the Plaintiff prevail in its action." Defs. Op. at 7. But "[c]ourts in this District have found that the appointment of a receiver is appropriate as a means to 'protect a party's interest in property pending resolution of a dispute over ownership or control.'" *Sherman Holdings USA LLC*, 2026 WL 2163648, at *7 (quoting *31 Prince St.*, 2023 WL 414249, at *4 and collecting cases); *Sovereign Bank*, 2011 WL 2693525, at *3 ("A district court 'may appoint a receiver of mortgaged property to protect and conserve it pending foreclosure.'" (quoting *Gordon v. Washington*, 295 U.S. 30, 37 (1935))). "[The Borrower Defendants'] counterarguments are unavailing. [Plaintiff's] foreclosure action does not preclude the appointment of a receiver, and courts regularly appoint receivers to manage a borrower's properties during the pendency of a foreclosure action. The Borrower Defendants have failed to show that any adequate legal remedies are available to Plaintiff, and so this factor weighs in favor of appointing a receiver." *Sherman Holdings USA LLC*, 2026 WL 2163648, at *7.

Turning to the issue of fraudulent conduct, "[t]here are no allegations of fraud in this case, but courts have 'appointed receivers even where there was no evidence of fraud.'" *Nesbitt Bellevue Prop.*, 866 F. Supp. 2d at 250 (quoting *D.B. Zwirn*, 550 F.Supp.2d at 491 & n. 64).

Finally, regarding the merits of the underlying foreclosure action, Plaintiff has provided "uncontested evidence that [] defaulting events have [] occurred." *Aevri Salina Meadows LLC*, 2023 WL 8111795, at *4. This includes the Walet Declaration, ECF No. 17; Plaintiff's May 27, 2025 Notice of Default, informing the Borrower Defendants that "Borrower has failed to pay or cause to be paid all Taxes when due and before the addition of any interest, fine, penalty or cost

for nonpayment, including but not limited to Borrower's failure to repay real estate tax advances made on behalf of Borrower in the amount of $195,247.06," ECF No. 5-11; and Plaintiff's June 11, 2025 Acceleration Letter, reiterating that "Borrower[] fail[ed] to (i) pay or cause to be paid all Taxes when due and before the addition of any interest, fine, penalty or cost for nonpayment, and (ii) reimburse Lender for real estate tax advances made on behalf of Borrower in the amount of $195,247.06 in accordance with Section 6.08(a) of the Loan Agreement," ECF No. 5-12. "Given this evidence [] of [] events of default, and the lack of an opposition from [the Borrower Defendants] contesting that evidence . . . the Court [] finds that Plaintiff has a high probability of success on the merits in its underlying action, [as] it is predicated on the existence of these same defaulting events." *Aevri Salina Meadows LLC*, 2023 WL 8111795, at *4.

In short, together with the Borrower Defendants' express consent to appointment of a receiver, "the relevant factors weigh in favor of appointing a receiver."[5] *Computershare Tr. Co. N.A.*, 2025 WL 2402262, at *2.

## III. CONCLUSION

For the reasons stated above, Plaintiff's motion for the appointment of a receiver is GRANTED. The Court has also entered an order appointing Trigild IVL to act as receiver for the property at 1275 Lafayette Avenue, Bronx, New York, 10474. "This Order is without prejudice to any of the Defendants [who have not yet appeared in this case and who might] challeng[e] the appointment of [Trigild IVL] as receiver after they appear in the case." *Aevri Salina Meadows LLC*, 2023 WL 8111795, at *5.

---

[5] As for the fourth factor, which requires weighing whether "the probability that harm to plaintiff by denial of the appointment would be greater than the injury to the parties opposing appointment," *Aevri Salina Meadows LLC*, 2023 WL 8111795, at *4, the Borrower Defendants do not offer even a "speculative assertion" regarding their risk of injury, *Kairos Credit Strategies Operating P'ship, LP v. Friars Nat'l Ass'n*, No. 23 Civ. 2960 (JPO), 2023 WL 3675921, at *3 (S.D.N.Y. May 26, 2023) (finding the fourth factor favored appointing a receiver where defendant had offered "only the risk of a vague injury").

The Clerk of Court is directed to terminate ECF No. 14.

SO ORDERED.

Dated: October 18, 2026
New York, New York

Jennifer H. Rearden

JENNIFER H. REARDEN
United States District Judge